UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRYAN WILLIAMS, ON BEHALF
OF HIMSELF AND THOSE
SIMILARLY SITUATED,

         CASE NO.: 8:09-CV-00709-RAL-MAP

    Plaintiff,

vs.

KENCO LOGISTIC SERVICES,
INC., A FOREIGN LIMITED
LIABILITY COMPANY,

    Defendant.      /

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Comes now the Defendant, Kenco Logistic Services, LLC ("Kenco"), by and through counsel, pursuant to the Court's Scheduling Order of June 18, 2009, and files this statement of undisputed facts in support of its motion seeking a summary judgment as to all claims made by Plaintiffs.[1]

    1.    Plaintiff, Bryan Williams, filed this lawsuit on April 15, 2009, alleging that he is owed overtime under the Fair Labor Standards Act ("FLSA"). Docket No. 1.

    2.    Thirty-seven other individuals, all former or current delivery drivers employed by Defendant at one of the distribution centers it operates for Whirlpool,

---

[1] The Plaintiffs in this case include Bryan Williams, as the named Plaintiff, as well as the thirty-seven (37) other individuals who have filed notices of consent to join.

Inc. ("Whirlpool") in Orlando, Ft. Myers, Tampa, or Pompano Beach, have filed notices of consent to join the lawsuit. Docket Nos. 2, 31, 32, 33, 34, and 39.

3. Defendant timely filed its Answer on June 10, 2009, denying Plaintiff's claims and asserting the motor carrier exemption as an affirmative defense. Docket No. 18.

4. Kenco is a third-party logistics company that provides management, warehousing, and distribution services to various third-party customers, such as Whirlpool. Gonzalez ¶3; Ziccardi Dep. 8.[2]

5. In the provision of these services for Whirlpool, Kenco operates a dedicated regional distribution center ("RDC") in Orlando, Florida for which Whirlpool is the leaseholder. Gonzalez ¶3; Mihalik; ¶3; Mihalik Dep. 9.[3]

6. This RDC is dedicated 100% to Whirlpool appliances. Gonzalez ¶2; Ziccardi Dep. 10.

7. At the Orlando RDC, Kenco receives finished goods, such as washers, dryers, refrigerators, ovens, microwave ovens, etc., that are shipped from various Whirlpool factory distribution centers ("FDCs"). Mihalik ¶4; Ziccardi Dep. 12; Mihalik Dep. 10-11.

8. These Whirlpool FDCs are located in Ohio, California, Delaware,

---

[2] The declaration of Henry Gonzalez is filed herewith and will be referred to herein by paragraph as "Gonzalez ¶___." The deposition of Mark Ziccardi is filed herewith and will be referred to herein by page as "Ziccardi Dep. ___."

Mississippi, Texas, Tennessee, Oklahoma, Arkansas, and Mexico. No FDCs are located in Florida. <u>Mihalik</u> ¶4; <u>Ziccardi Dep.</u> 12; <u>Mihalik Dep</u>. 10-11.

9. Thus, <u>all</u> product coming into the Orlando RDC is manufactured out-of-state and shipped to the Orlando RDC by over-the-road commercial trucks (98%) or rail (2%). <u>Gonzalez</u> ¶4; <u>Mihalik</u> ¶4.

10. Kenco does not order any appliances from Whirlpool for sale to customers. <u>Mihalik</u> ¶5; <u>Ziccardi</u> ¶3.[4]

11. Rather, Whirlpool determines what to ship to the Orlando RDC and directs Kenco where to deliver specified quantities of products to specific customers by a certain date. <u>Mihalik</u> ¶5; <u>Ziccardi Dep.</u> 15, 18-19.

12. Kenco simply receives the product and schedules drivers for deliveries to Whirlpool customers as directed by Whirlpool. <u>Ziccardi Dep.</u> 18-19; 23-4; <u>Mihalik Dep.</u> 20.

13. Likewise, Kenco does not sell any products out of the Orlando RDC. <u>Mihalik</u> ¶7; <u>Ziccardi</u> ¶5; <u>Williams</u> 6.[5]

14. Whirlpool tracks the serial numbers of all product shipped by the FDCs. <u>Mihalik Dep</u>. 18.

15. Shipments from the FDCs to the RDC include a proof of delivery and

---

[3] The declaration of Steve Mihalik is filed herewith and will be referred to herein by paragraph as "<u>Mihalik</u> ¶___." The deposition of Mr. Mihalik is filed herewith and will be referred to herein by page as "<u>Mihalik Dep.</u> ___."

[4] The declaration of Mark Ziccardi is filed herewith and will be referred to herein by paragraph as "<u>Ziccardi</u> ¶____."

a packing list. Mihalik ¶6; Ziccardi ¶4.

16. The Kenco employee who physically receives the shipment places the seal from the truck on the bill of lading and signs his/her name. Ziccardi ¶4.

17. The packing list cross-references the bill of lading number and lists the shipment number. Ziccardi ¶4.

18. Once product is received from the FDC, an Inbound Putaway list is generated from Whirlpool's SAP so that the accuracy of the inbound shipment can be audited. Mihalik ¶6; Ziccardi ¶4.

19. These documents are used to track the inventory and to ensure that the end customers receive the proper items. Mihalik ¶6; Ziccardi ¶4.

20. The putaway list includes the model numbers and descriptions for the items contained on the packing list. Mihalik ¶6; Ziccardi ¶4.

21. All of these documents come from Whirlpool or are generated out of Whirlpool's SAP system. Mihalik ¶6; Ziccardi ¶4.

22. Seventeen (17) percent of the product shipped from Whirlpool FDCs to the Orlando RDC is "committed product" that is to be used to fulfill customer orders that were placed with Whirlpool prior to the time the goods were shipped from Whirlpool to the Orlando RDC. Mihalik ¶8.

23. Moreover, approximately 44% of the trucks that deliver finished goods to the Orlando RDC contain "committed product" that is being shipped to fill

---

[5] Relevant excerpts from the deposition of Bryan Williams are attached to the Motion as

existing customer orders.  Id.; Mihalik Dep. 24-5.

24.   Prior to December 2006, however, the Orlando RDC was in a smaller building.  Consequently, the percentage of committed goods shipped to the Orlando RDC by Whirlpool FDCs was greater.  Ziccardi ¶6.

25.   The Orlando RDC receives these finished goods and puts them in inventory until instructed by Whirlpool to deliver them.  Mihalik ¶5, 8.

26.   Kenco does not alter the goods in any way prior to delivery to the end customers.  Ziccardi ¶6.

27.   In addition to the committed goods shipped by Whirlpool to the Orlando RDC, Whirlpool uses forecast models to predict what finished products will be needed to fill anticipated orders.  Mihalik ¶11.

28.   These forecasts are based on seasonal and historical sales data that Whirlpool uses to predict what products will be sold and delivered in the short term and long term horizon.  Mihalik ¶11.

29.   Approximately 60% of the finished products shipped from Whirlpool FDCs to the Orlando RDC are shipped as a result of these forecasts.  Mihalik ¶11; Mihalik Dep. 33-7; Ziccardi ¶12.

30.   Whirlpool also ships "safety stock" to fill unanticipated orders, i.e., those not committed prior to shipment or forecasted.  Mihalik ¶12; Ziccardi ¶13.

31.   Safety stock accounts for approximately 23% of the inventory at the

---

Exhibit 1 and will be referred to herein by page as "Williams ___."

Orlando RDC.  <u>Mihalik</u> ¶12; <u>Mihalik Dep</u>. 37-8.

32. Neither this safety stock, nor any other stock, is sold from the Orlando RDC by Kenco <u>Mihalik</u> ¶7; <u>Ziccardi</u> ¶5.

33. Whirlpool anticipates at the time it ships this stock to Kenco that it will ultimately be delivered to one of Whirlpool's customers.  <u>Mihalik</u> ¶15.

34. All of the goods delivered to the Orlando RDC by Whirlpool are intended to ultimately be delivered to Whirlpool customers.  <u>Mihalik</u>. ¶15.

35. Currently, the Orlando RDC turns its inventory over in approximately 30 days.  <u>Ziccardi</u> ¶14; <u>Mihalik</u> ¶14.

36. Prior to December 2006, the inventory turned over approximately every 22 days.  <u>Ziccardi</u> ¶14; <u>Mihalik</u> ¶14.

37. The delivery drivers working in Orlando, Ft. Myers, Tampa, and Pompano Beach  work in what are called Local Distribution Centers ("LDCs"). <u>Gonzalez</u> ¶11; <u>Ziccardi</u> ¶10.

38. The LDC in Orlando is physically located in the RDC.  <u>Id</u>.; <u>Mihalik Dep.</u> 11-13.

39. Once Whirlpool directs the Orlando RDC to deliver the finished goods to the customer, the order is printed by Kenco, picked, and loaded on to a trailer or straight truck for pickup by the delivery driver the next morning.  <u>Gonzalez</u> ¶8.

40. Printed order forms (which originate from Whirlpool) are used to pick

the goods to be delivered.  Gonzalez ¶8.

41. Order numbers are included on these forms.  Gonzalez ¶8.

42. Once the goods are loaded, the LDC delivery drivers, including Plaintiffs, obtain and utilize trip sheets to make their deliveries.  Gonzalez ¶9, 11; Ziccardi ¶8, 10; Williams 9, 19-42, Exhs. 1-11.

43. The trip sheets contain a list of order numbers, or stops.  Gonzalez ¶9, 11; Ziccardi ¶8, 10; Williams 9, 19-42, Exhs. 1-11.

44. Attached to the trip sheets are individual bills of lading for each order, which itemizes the goods to be delivered to each customer.  Gonzalez ¶9, 11; Ziccardi ¶8, 10; Williams 9, 19-42, Exhs. 1-11.

45. The bills of lading and trip sheets cross-reference each other in order to ensure the correct goods are delivered to the correct customers.  Gonzalez ¶9, 11; Ziccardi ¶8, 10; Williams 9, 19-42, Exhs. 1-11.

46. The drivers then deliver to and install the finished goods for the ultimate purchaser or "ship to" customer.  Gonzalez ¶9, 11; Ziccardi ¶8, 10; Williams 9, 19-42, Exhs. 1-11.

47. Once the goods are delivered, an entry is made in Whirlpool's system reflecting completion of the order.  Mihalik ¶9, 10; Ziccardi ¶9; Mihalik Dep. 18, 24.

48. Whirlpool can also track inventory through serial numbers which tie particular goods to particular orders.  Mihalik ¶9, 10; Ziccardi ¶9; Mihalik Dep. 18, 24.

49. Plaintiff Bryan Williams was employed by Kenco from February 9, 1990 to November 28, 2008. Gonzalez ¶12; Williams 5, 13.

50. During the relevant time period, Plaintiff Williams and the other Plaintiffs drove commercial motor vehicles and transported property for a commercial purpose in fulfillment of their duties delivering and installing finished goods shipped from out-of-state Whirlpool FDCs to the Orlando RDC. Gonzalez ¶12; Williams 7, 9.

51. Each driver delivers committed goods from the Orlando RDC to the ultimate purchaser in accordance with delivery instructions generated by and received from Whirlpool. Gonzalez ¶¶12, 13, 17; Ziccardi ¶11.

52. On any given day, all delivery drivers deliver committed goods, goods shipped to the Orlando RDC pursuant to forecasts, and safety stock. Gonzalez ¶¶12, 13, 17; Ziccardi ¶11.

53. In addition, each driver, including Plaintiffs, has a Commercial Driver's License ("CDL") and fills out a Federal DOT log book. Gonzalez ¶19; Williams 7. See also Plaintiff Williams' Responses to Defendant's Request for Admissions ¶¶4, 7; and Plaintiffs Flores', Caceras', Aponte's, and Neal's Responses to Defendant's Request for Admissions ¶¶4, 8, attached hereto as Collective Exhibit 2.[6]

---

[6] Pursuant to the joint stipulation filed on January 20, 2010, the parties have agreed that Plaintiffs Bryan Williams, Jose Aponte, Jose Caceras, Arthur Flores, and Mark Neal are representative of all other individuals who have filed consents to opt in to this case with respect to the duties performed while working as delivery drivers for Defendant, including,

54. Each driver is limited by the federal regulations with respect to the number of hours he or she is allowed to drive in any given seven-day period. Gonzalez ¶19; Exh. 2 ¶¶1-8.

55. The drivers are also subject to DOT-regulated random drug and alcohol screenings, must undergo DOT-related physicals and maintain current DOT-approved medical certification cards, must undertake safety inspections of vehicles as required by DOT regulations, and receive copies of the Federal Motor Carrier Safety Regulations. Gonzalez ¶19; Exh. 2 ¶¶1-8.

56. The smallest truck used to deliver goods from the Orlando LDC is a straight truck with a GVWR rating of 16,000 pounds. Gonzalez ¶21.

57. Plaintiff regularly drove a day cab articulate tractor with a 28 to 53 foot trailer. All other putative Plaintiffs drove the same equipment. Gonzalez ¶21.

58. All trucks used to deliver product from the Orlando LDC are commercial motor vehicles, and each delivery driver in the Orlando LDC, including Plaintiff and the putative Plaintiffs, are responsible for the safe operation of the vehicle on the highways in Florida. Gonzalez ¶21; Exh. 2 ¶¶5, 6.

59. Whirlpool acquired Maytag, and the Orlando RDC thereafter began distributing Maytag products in March 2007. Gonzalez ¶22; Williams 47, Ziccardi Dep. 10.

60. Due to an inability to merge the two companies' systems, the Orlando

---

but not limited to, types of deliveries made, type of inventory delivered, and frequency of

RDC cross-docked Maytag products. Gonzalez ¶22.

61. All of these Maytag products were shipped to the Orlando RDC with a specific customer identified for delivery of the product. Gonzalez ¶22.

62. This lasted until the end of September 2007, and during this time frame, all delivery drivers in Orlando, Ft. Myers, Tampa and Pompano Beach, including Plaintiffs, delivered Maytag products. Gonzalez ¶22; Williams 48-9.

63. In addition, the Orlando RDC handles "low velocity inventory" shipped by Whirlpool for delivery out of the Orlando RDC. Mihalik ¶16; Gonzalez ¶23.

64. Low velocity inventory is an item that sells very infrequently. Mihalik ¶16; Gonzalez ¶23.

65. It is sent through the Orlando RDC after it has been purchased by the customer and is delivered by LDC drivers like Plaintiff and the other putative Plaintiffs. Mihalik ¶16; Gonzalez ¶23.

66. Low-velocity inventory currently represents less than one (1) percent of the deliveries made by the Orlando drivers. Gonzalez ¶23.

67. However, a larger number of LVIs were delivered between October 2006 and March 2009. Gonzalez ¶23.

68. Another part of the LDC driver's duties includes home delivery haul aways ("HDHAs"). Gonzalez ¶25; Exh. 2 ¶¶18, 20-22; Williams 45-6.

---

such deliveries. Docket No. 37.

69. LDC drivers are sometimes requested to pick up unwanted appliances from Whirlpool customers. Gonzalez ¶25; Williams 45-6.

70. Indeed, Whirlpool has asked Kenco to provide this service. Gonzalez ¶25.

71. Upon return to the LDC, HDHAs are immediately loaded on to AAA Cooper trailers to avoid product contamination of the warehouse and are shipped via truck to an Atlanta, Georgia recycler, on average, once a month. Ziccardi Dep. 55-58; Gonzalez ¶25.

72. Plaintiffs are paid pursuant to a pay plan that compensates them on the basis of the weight of the load and each task performed during the delivery and installation of the Whirlpool products they deliver. Gonzalez ¶20; Williams 7.

74. They also receive a minimum daily rate, as well as a specified hourly rate for down time. Gonzalez ¶20.

75. Because Kenco has always considered its Orlando LDC drivers to be exempt from the FLSA's overtime provisions under the Motor Carrier Act Exemption, they are not paid overtime for any hours worked over 40 in a work week. Gonzalez ¶20.

76. Kenco is in the business of using commercial vehicles to carry property on public highways and is engaged in interstate commerce. Gonzalez ¶21.

77. Kenco has a DOT number and has undergone DOT audits. Gonzalez ¶18.

78. All of Kenco's drivers have Class A CDLs, are subject to maximum hours limitations, fill out and maintain DOT log books, are subject to DOT-regulated random drug screening and blood alcohol screening, must undergo DOT-regulated physicals and maintain current DOT-approved medical certification cards, must undertake safety inspections of vehicles as required by DOT regulations, and receive copies of the Federal Motor Carrier Safety Regulations. Gonzalez ¶19; Exh. 2 ¶¶1-8.

79. The motor vehicles utilized by Plaintiffs and the other putative Plaintiffs all have a GVWR rating in excess of 10,000 pounds. Gonzalez ¶21.

80. Plaintiffs actually delivered committed product. Ziccardi ¶8, 9, 11, 16; Gonzalez ¶¶9, 13.

81. Based on a sampling of the deliveries made by Plaintiff in the relevant time period, he delivered at least one or two committed products every month. Ziccardi ¶16. *See also*, Williams 14-43, Exhs. 1-11; Exh. 2 ¶¶13-17; Joint Stipulation, Docket No. 37.

    Respectfully submitted,

    **/s/ KEVIN JOHNSON**
    Kevin Johnson, Esquire
    FLBN: 0013749
THOMPSON, SIZEMORE, GONZALEZ
& HEARING, P.A.
One Tampa City Center
201 N. Franklin Street, Suite 1600
Tampa, FL 33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
Email: Kjohnson@tsg-law.com

    **/s/ KAREN M. SMITH**
William G. Trumpeter, Esquire
TN BPR No. 9301
Karen M. Smith, Esquire
TN BPR No. 15042
MILLER & MARTIN PLLC
1000 Volunteer Building, Suite 100
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480
Email: btrumpeter@millermartin.com
Email: ksmith@millermartin.com
Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2010, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system:

    Carlos V. Leach, Esq.
    Morgan & Morgan, PA
    20 N. Orange Avenue, Suite 1600
    P.O. Box 4979
    Orlando, FL 32802-4979
    CLeach@forthepeople.com

    By:     s/ Karen M. Smith